IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DESIREE PURVENAS-HAYES<br>757 Rattling Run Road<br>Mickleton, New Jersey 08056<br><br>*Plaintiff,*<br><br>v.<br><br>SALTZ, MONGELUZZI & BENDESKY, P.C.<br>1650 Market Street, 52nd Floor<br>Philadelphia, PA 19103 and<br><br>ROBERT J. MONGELUZZI, ESQUIRE<br>1650 Market Street, 52nd Floor<br>Philadelphia, PA 19103<br><br>*Defendants.* | CIVIL ACTION<br><br>No. 2:22-cv-02277-ER<br><br>JURY TRIAL DEMANDED |

**SECOND AMENDED CIVIL ACTION COMPLAINT**

The above-named Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.   Introduction

1. Plaintiff, Desiree Purvenas-Hayes (hereinafter "Plaintiff") has initiated the instant action to recover damages for unpaid overtime compensation owed to her by her former employer, Saltz Mongeluzzi & Bendesky, P,C. (hereinafter "Defendant") pursuant to the Fair Labor Standards Act (FLSA) and other applicable federal and state law.

2. Plaintiff asserts claims for overtime compensation and retaliation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Pennsylvania's Minimum Wage Act, 43 P.S.§ 336.1, *et seq.* ("PMWA"), as well as a claim for unpaid wages pursuant to Pennsylvania's Wage Payment and Collection Law, 43 Pa. C.S.A. § 260.1 *et seq.* ("WPCL").

1

## II. **Parties**

3. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

4. Plaintiff is an adult individual with an address as captioned above.

5. Defendant Saltz, Mongeluzzi & Bendesky, P.C. (hereinafter "Defendant Law Firm") is a Pennsylvania Professional Corporation (PA Secretary of State Entity No. 2800152) with a business address as captioned above.

6. Defendant Law Firm is a nationally-recognized plaintiffs' litigation firm specializing in cases arising from catastrophic construction accidents and other mass casualty events.

7. Defendant Robert J. Mongeluzzi (hereinafter "Defendant Mongeluzzi") is an adult individual, an attorney at law, and the managing partner of Defendant Law Firm.

8. At all times relevant hereto, Defendant Mongeluzzi exercised sufficient control over the day-to-day operations of Defendant Law Firm, and maintained sufficient ownership interest therein, that he may be held individually liable for Plaintiff's unpaid wages under the FLSA.

9. At all times relevant hereto, Defendant Mongeluzzi was also an active decisionmaker for Defendant Law Firm, allowing him to be held individually liable on Plaintiff's claims under the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law.

10. Plaintiff formerly worked as a litigation paralegal for Defendants.

11. At all times relevant herein, Defendants acted through their agents, servants and employees, all of whom acted in the course and scope of their employment.

### III.     Jurisdiction and Venue

12.     The foregoing paragraphs are incorporated in their entirety as if set forth in full.

13.     The Court may properly maintain personal jurisdiction over Defendants because their contacts with the Commonwealth of Pennsylvania and the Eastern District of Pennsylvania are sufficient for the exercise of jurisdiction over it to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

14.     The Court may exercise original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of rights conferred under federal law.

15.     The Court may also maintain supplemental jurisdiction over the state law claims set forth herein or later added pursuant to 28 U.S.C. § 1367(a) and Rule 18 (a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

16.     Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants conduct business in this judicial district and because the acts and omissions giving rise to the claims set forth herein occurred exclusively in this judicial district, including specifically: (i) Plaintiff's employment with Defendants; and (ii) Defendants' failure to pay overtime compensation owed to Plaintiff.

### IV.     Factual Background

17.     The foregoing paragraphs are incorporated in their entirety as if set forth in full.

### a. *Plaintiff's Employment and Unpaid Overtime.*

18. Plaintiff was employed as a litigation paralegal for Defendants from January of 2012 through July 29, 2021.

19. At the inception of Plaintiff's employment, Defendants confirmed via her offer letter of January 11, 2012 that she would be an "hourly" employee working 35 hours per week.

20. Plaintiff worked a full-time schedule within the three (3) years preceding the filing of this action,

21. Plaintiff was paid $3,315.31 bi-monthly, or $79,567.44 annually.

22. Defendants' employees are paid on the 15th and the last day of each month.

23. Defendants issue their employees separate checks for regular and overtime pay.

24. At all times relevant hereto, Plaintiff was directly supervised by Adam Pantano, Esquire ("Pantano"), a partner of Defendant Law Firm.

25. From the inception of her employment through March 16, 2020, Plaintiff was treated as a non-exempt employee by Defendants and was compensated for the overtime hours she worked without issue.

26. On March 16, 2020, Plaintiff began working at home with the approval of Defendants due to the unprecedented Coronavirus pandemic.

27. Defendants provided Plaintiff with a laptop computer for home work purposes.

28. After the aforesaid date, Plaintiff continued to work a full time schedule as well as substantial overtime hours, was contacted at all hours by Pantano and other agents of Defendants via email, telephone and text messages regarding work-related projects and issues, and was expected to answer.

29. Over the period of time she worked at home, Plaintiff worked a substantial amount of overtime but was only paid for her overtime occasionally.

30. Plaintiff was paid no overtime for her work at home in 2020.

31. In 2021, Plaintiff received only $5,885.52 in overtime pay (far less than was required for the substantial hours she worked).

32. Plaintiff inquired repeatedly about payment for the overtime hours she worked but (other than occasional overtime payments in 2021 as aforesaid) payment was not made by Defendants.

33. Pantano advised Plaintiff that he was "trying to work on something" and to be "patient" about her unpaid overtime, but the situation was never resolved.

34. Plaintiff nonetheless continued to work tirelessly and with dedication to Defendants during the Coronavirus pandemic.

35. Plaintiff frequently worked 20 hour days (from 6 a.m. to 2 a.m. the next morning) and only shut down her work computer at 2. a.m. because Defendants' computer network rebooted at that time.

36. Plaintiff resigned from Defendants' employ on July 29, 2021 and has not received compensation for all the overtime work she performed.

      **b. *The Retaliation and Disclosure of Plaintiff's Confidential Medical Information by Defendant Mongeluzzi.***

37. Plaintiff filed the instant civil action on June 7, 2022.

38. On or about June 12 or June 13, 2022, Defendant Mongeluzzi made statements regarding Plaintiff and the instant action to the Philadelphia *Legal Intelligencer* (a Philadelphia legal newspaper read by over 14,000 members of the legal community daily).

39. In his statement to the *Legal Intelligencer,* Defendant Mongeluzzi publicly

disclosed confidential medical information related to Plaintiff.

40.     Specifically, Defendant Mongeluzzi stated that Plaintiff was not vaccinated against the COVID-19 virus, was one of two employees at Defendant Law Firm who allegedly refused the vaccination, was "disgruntled," and had made "unfounded" claims against Defendants.

41.     Plaintiff's COVID-19 vaccination status was confidential medical information under the Americans with Disabilities Act.

42.     Defendant Mongeluzzi knew or should have known that Plaintiff's vaccination status was confidential medical information since he is a practicing attorney and the managing partner of a large law firm.

43.     The *Legal Intelligencer* reported the foregoing statements to the Philadelphia legal community on June13, 2022, causing significant embarrassment and pain and suffering to Plaintiff (as Defendant Mongeluzzi intended).

44.     The foregoing disclosure was in direct violation of the confidentiality requirements of the Americans with Disabilities Act (*see* 42 U.S.C. § 12112(d)(3)(B) and §12112(d)(4)(C)).

45.     The foregoing disclosure was also made in retaliation for Plaintiff's filing of the instant civil action to assert her rights under the Fair Labor Standards Act.

46.     Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission seeking redress for Defendants' deliberate violations of the confidentiality requirements of the ADA, and will seek to amend this Complaint to include a claim under the ADA once she receives a Notice of Right to Sue on same.

   *c.* ***Plaintiff's Job Applications and Rejections.***

47.  "Google", an internet search engine owned by Alphabet, Inc., controls over 90% of the internet search market share.

48.  As of the date of this filing, a "Google" internet search of Plaintiff's name produces the *Legal Intelligencer* article in which Defendants made their retaliatory statements regarding Plaintiff (*see* paragraphs 38-40 and paragraph 43, *supra*) on the first page of search results.

49.  The article in question appears (as of the date of this filing) in the top three search results and can be clicked on and read as a "free" article by persons who do not subscribe to the *Legal Intelligencer.*

50.  While estimates vary, between 66% and 80% of employers are believed to utilize "Google" searches to research job candidates.

   **i.**  **The United States Attorneys' Office Position**

51.  On May 4, 2022, Plaintiff was interviewed for a Paralegal Specialist Position in the Asset Recovery and Financial Litigation Unit of the United States Attorneys' Office for the Eastern District of Pennsylvania.

52.  The interview panel included Lauren Baer, Esquire (the wife of Benjamin J. Baer, a partner in Defendant Law Firm).

53.  On July 14, 2022, Plaintiff received an email advising that another candidate was chosen for the foregoing position.

54.  However, on July 14, 2022 (and as of the date of this filing), the "USAJOBS.com" website indicated that the position was still listed and that applications are being reviewed.

### ii. The Boeing Position

55. On June 14, 2022, Plaintiff applied for a mid-level paralegal position at The Boeing Company.

56. On September 26, 2022, Plaintiff was interviewed for the foregoing position.

57. On September 27, 2022, Plaintiff was asked to provide a writing sample, and did so on September 29, 2022.

58. On October 24, 2022 and again on October 28, 2022, Plaintiff sent emails following up on the interview process. .

59. As of the date of this filing, Plaintiff has not heard back from Boeing and has not had a response to her October emails.

### iii. The New Jersey Court Positions

60. Plaintiff applied for an Administrative Specialist 2 position with the New Jersey Courts on July 20, 2022 and was rejected for same on September 28, 2022.

61. Plaintiff applied for a Court Services Supervisor 2 position with the New Jersey Courts on June 23, 2022 and was rejected for same on September 29, 2022.

62. Plaintiff applied for a Court Services Officer 2 position with the New Jersey Courts on March 17, 2022 and was rejected for same on October 4, 2022.

63. Plaintiff applied for a Vicinage Assistant Chief Probation Officer position with the New Jersey Courts on August 9, 2022 and was rejected for same on October 11, 2022.

### iv. The CNA Talent Acquisition Position

64. Plaintiff was invited to apply for a Law Office Supervisor position by CNA Talent Acquisition on October 9, 2022 and was rejected for the foregoing position on October 11, 2022.

### v.     The DRPA Position

65. Plaintiff applied for a paralegal position with the Delaware River Port Authority on January 30, 2022 and was rejected for the foregoing position on July 15, 2022.

### vi.    The IGH/Cooper Position

66. Plaintiff was invited to apply for a paralegal position at Cooper Health by Insight Global Health (IGH) on September 21, 2022 and has heard nothing back as of the date of this filing.

67. Plaintiff believes and therefore avers that she was rejected for some or all of the foregoing positions because Defendants' statements regarding her (*see* paragraphs 38-40 and paragraph 43, *supra*) were located through online searches or otherwise and read by the employers concerned.

## COUNT I
## Violations of the Fair Labor Standards Act
## Plaintiff v. Both Defendants

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. During the Statutory Period, Plaintiff was at all material times a non-exempt employee who was entitled to overtime payments during the Statutory Period.

70. During the Statutory Period, Plaintiff routinely worked in excess of 40 hours during any given work week during the Statutory Period.

71. During the Statutory Period, Plaintiff did not receive overtime payment for such overtime hours.

72. Defendants and their agents knew or should have known that they were required to pay overtime to plaintiff during the Statutory Period.

73. During the Statutory Period, Plaintiff was entitled to receive payment equal to one and one-half her hourly rate for every hour worked beyond forty (40) hours per week, along with attorneys' fees, costs, liquidated damages and all other relief appropriate under the FLSA.

74. While employed by Defendants, Plaintiff provided labor and other services that qualified her for overtime under the FLSA.

75. The FLSA requires payment of overtime for all work performed by an employee, regardless of whether it is carried out at an office or other work location or at the employee's home. *See* United States Department of Labor Wage and Hour Division Field Assistance Bulletin Nos. 2020-5 and 2020-1567-NAT.

76. Section 541.301(e)(7) of the FLSA specifies that paralegals are not exempt from overtime except in rare circumstances not applicable here.

77. Defendants knowingly and intentionally failed to pay overtime to Plaintiff, in violation of the FLSA.

78. Plaintiff seeks damages in accordance with the FLSA for the overtime payments that Defendants willfully failed and refused to pay to her.

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants in an amount to fully compensate her for her losses, along with reasonable attorneys' fees, liquidated damages, court costs, injunctive relief, and such other relief as the Court deems just and appropriate pursuant to the FLSA.

## COUNT II
## FLSA Retaliation
## Plaintiff v. Both Defendants

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

80. Section 15(a)(3) of the FLSA states that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

81. Defendants' public disclosure of Plaintiff's confidential medical information and their other statements as aforesaid were made deliberately and in retaliation for Plaintiff's filing of the instant action and other protected activity under the FLSA.

82. The aforesaid disclosure of Plaintiff's confidential medical information and the other statements made by Defendants as aforesaid constituted "adverse action" against Plaintiff. *See* United States Department of Labor Wage and Hour Division Field Assistance Bulletin No. 2022-02 (March 10, 2022)(noting that adverse action can take "many forms" not directly related to employment or wages and may often be "subtle").

83. The temporal proximity between Plaintiff's protected activity (on June 7, 2022) and the wrongful actions of Defendants (on June 12 or June 13 of 2022), combined with the fact that they discussed Plaintiff's confidential medical information while making statements directly about her protected activity, demonstrates the required causal connection between Plaintiff's protected activity and the retaliatory actions of Defendants.

84. Upon information and belief, Defendants' statements as aforesaid constituted an adverse employment action in that they deprived Plaintiff of employment opportunities, including but not limited to the opportunities outlined *supra* at paragraphs 51 through 67.

85. As a result of the foregoing retaliation, Plaintiff also suffered other damages,

including significant embarrassment, distress, reputational harm, and pain and suffering, and will continue to suffer such damages in the future.

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants in an amount to fully compensate her for her losses, along with reasonable attorneys' fees, liquidated damages, court costs, punitive damages, injunctive relief (including specifically an Order prohibiting any further retaliation against Plaintiff) and such other relief as the Court deems just and appropriate pursuant to the FLSA.

### COUNT III
### Violations of the PA Minimum Wage Act
### Plaintiff v. Both Defendants

86. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

87. During the Statutory Period, Plaintiff was at all material times a non-exempt employee who was entitled to overtime payments during the Statutory Period that she was employed by Defendants.

88. During the Statutory Period, Plaintiff routinely worked in excess of 40 hours during any given work week during the Statutory Period.

89. During the Statutory Period, Plaintiff did not receive overtime payment for such overtime hours.

90. Defendants and their agents knew or should have known that they were required to pay overtime to Plaintiff during the Statutory Period.

91. During the Statutory Period, Plaintiff was entitled to receive payment equal to one and one-half her hourly rate for every hour worked beyond forty (40) hours per week, along with attorney's fees, costs, liquidated damages and all other relief appropriate under

the PMWA.

WHEREFORE, Plaintiff, respectfully requests entry of judgment in her favor and against Defendants in a sufficient amount to fully compensate her for her losses, along with attorney fees, costs and such other relief as the Court deems just and appropriate pursuant to the PMWA.

## COUNT IV
### Violations of the PA Wage Payment and Collection Law
### Plaintiff v. Both Defendants

92. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93. During the Statutory Period, Plaintiff was at all material times a non-exempt employee who was entitled to overtime payments during the Statutory Period that she was employed by Defendants.

94. During the Statutory Period, Plaintiff routinely worked in excess of 40 hours during any given work week during the Statutory Period.

95. During the Statutory Period, Plaintiff did not receive any compensation for such overtime hours.

96. Defendants' failure to pay Plaintiff compensation to which she was entitled was without justification or good reason.

97. During the Statutory Period, Defendants knew or should have known that they were required to pay overtime to Plaintiff.

98. Plaintiff is entitled to receive payment equal to one and one-half her hourly rate for every hour worked beyond forty (40) hours per week, along with attorney's fees, costs, liquidated damages and all other relief appropriate under the WPCL.

WHEREFORE, Plaintiff, respectfully requests entry of judgment in her favor and against Defendants in a sufficient amount to fully compensate her for her losses, as well as attorneys' fees, costs and all such other relief as the Court deems just and appropriate pursuant to the Wage Payment and Collection Law.

Respectfully Submitted,

S/ Wayne A. Ely
Wayne A. Ely, Esquire
Attorney for Plaintiff
225  Lincoln Highway
Building A, Suite 150
Fairless Hills, Pennsylvania 19030
(215) 801-7979

November 7, 2022