IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESIREE PURVENAS HAYES, | : | CIVIL ACTION |
| | : | NO. 22-2277 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SALTZ, MONGELUZZI & BENDESKY, | : | |
| P.C., et al. | : | |
| | : | |
| Defendants | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    JANUARY 23, 2023

## I.    INTRODUCTION

Before the Court is Defendants' Second Partial Motion to
Dismiss. Plaintiff Desiree Purvenas-Hayes seeks unpaid overtime
compensation allegedly owed to her by her former employer,
Saltz, Mongeluzzi & Bendesky, P.C. Second Am. Compl. ¶ 1, ECF
No. 25 [hereinafter Am. Compl.]. Plaintiff asserts her claims
under the Fair Labor Standards Act, Pennsylvania's Minimum Wage
Act, and Pennsylvania's Wage Payment and Collection Law. Id.
¶ 2. Plaintiff also seeks damages for retaliation under FLSA for
filing this lawsuit. Id. ¶¶ 79-85. Plaintiff has withdrawn her
claim for invasion of privacy under state law (formerly Count
V).

1

Defendants renew their partial motion to dismiss. In their initial motion, Defendants argued that Plaintiff's retaliation claim fails because she did not allege that certain statements made by Mr. Mongeluzzi, a senior partner at her former employers' law firm, in the <u>Legal Intelligencer</u> article impacted her current or future employment prospects or dissuaded Plaintiff from pursuing her FLSA claim. <u>See</u> Defs.' Mot. to Dismiss 1-2, ECF No. 12. In her Second Amended Complaint, Plaintiff describes the rejections she has faced after applying for paralegal jobs in the wake of the publication of the <u>Legal Intelligencer</u> article. Defendants maintain that Plaintiff has failed to state a FLSA retaliation claim because "the Second Amended Complaint fails to establish any plausible link between the <u>Intelligencer</u> Statements and the rejection of several job applications" and "Plaintiff fails to allege that the Statements would have dissuaded a reasonable person from pursuing a FLSA claim." Defs.' Mot. to Dismiss Count II of Pl.'s Second Am. Compl. 2, ECF No. 26 [hereinafter "Defs.' Mot."].

## II.  BACKGROUND

Plaintiff was employed by Defendant as a litigation paralegal for approximately nine and a half years. Am. Compl. ¶ 18. Plaintiff was paid hourly, 35 hours per week, for a total of $79,567.44 annually. Am. Compl. ¶ 19, 21. Through March 16, 2020, Plaintiff was compensated for the overtime hours she

worked as a non-exempt employee. Am. Compl. ¶ 25. On March 16, 2020, Plaintiff began working from home because of the Coronavirus pandemic, and began working "substantial overtime hours" and "was expected to answer" communications from agents of Defendant law firm "at all hours." Am. Compl. ¶ 26, 28. Yet, Plaintiff alleges she was paid no overtime for her work at home in 2020, and only occasionally paid overtime for her work from home in other years. Am. Compl. ¶¶ 29-30. Plaintiff provided notice to Defendants regarding the overtime discrepancy, "but the situation was never resolved." Am. Compl. ¶¶ 32-33. Plaintiff ultimately resigned on July 29, 2021, and alleges she has never been paid for all the overtime work she performed. Am. Compl. ¶ 36.

Plaintiff further alleges that, after she filed her complaint, Defendant Mongeluzzi made statements to a reporter from the Legal Intelligencer writing a story about Plaintiff's lawsuit disclosing Plaintiff's COVID-19 vaccination status, both in violation of the Americans with Disabilities Act, and allegedly as retaliation for Plaintiff's filing of a lawsuit for overtime payment owed. Am. Compl. ¶¶ 37-45.

In her Second Amended Complaint, Plaintiff states that a Google search of her name produces the Legal Intelligencer article in which Defendants made the allegedly retaliatory statements. Am. Compl. ¶ 49. Defendants quote the relevant

portion of the Legal Intelligencer article in their first

partial motion to dismiss:

> According to Mongeluzzi, Purvenas-Hayes' July 2021
> departure came just two weeks before the firm's
> deadline for employees to receive their firm-mandated
> COVID-19 vaccinations. He said she left because she
> did not wish to receive the shot and that he was one
> of two employees in the approximately 100-person firm
> not to comply.
> Mongeluzzi said the case is an instance of a
> disgruntled employee suing over unfounded claims.

Def.'s Partial Mot. to Dismiss at 1, ECF No. 12 (quoting Def.'s

Partial Mot. to Dismiss, Ex. A, Former Paralegal Sues Saltz

Mongeluzzi Over Unpaid Overtime Claims, The Legal Intelligencer

(June 13, 2022, 5:03 PM),

https://www.law.com/thelegalintelligencer/2022/06/13/former-

paralegal-sues-saltz-mongeluzzi-over-unpaid-overtime-

claims/?slreturn=20220829133437).

Plaintiff claims that the article is in the top three

search results and can be read for free by users who are not

subscribers to the Legal Intelligencer. Id. ¶ 49. Plaintiff

further alleges that this Google search result is connected to a

number of recent job rejections. For instance, she interviewed

for a paralegal specialist position with the United States

Attorney's Office, but was ultimately told that another

candidate was chosen, despite the USAJobs website posting for

the position stating that the position was still available. Id.

¶¶ 51-54. Plaintiff claims that she was rejected by a total of

six employers for paralegal positions, which she applied for
between May 4, 2022, and October 9, 2022. Id. ¶¶ 51-67. The
Legal Intelligencer article was published on June 13, 2022.
Plaintiff does not allege either that she was told that the
reason that she was not hired was connected to her prior
employment for Defendant, or otherwise asked any questions about
the statements during the interviews. Based on the timing of the
article and Plaintiff's employment opportunity rejections,
Plaintiff claims that Defendants' statement in the Legal
Intelligencer constituted an adverse employment action. Id.
¶ 84.

Overall, in her Second Amended Complaint, Plaintiff seeks
relief on four claims: FLSA violations for failure to pay
overtime compensation (Count I); FLSA retaliation (Count II);
violations of the Pennsylvania Minimum Wage Act (Count III); and
violations of the Pennsylvania Wage Payment and Collection Law
(Count IV). Plaintiff has withdrawn her state-law claim for
invasion of privacy. Defendants seek only to dismiss Count II of
Plaintiff's Second Amendment Complaint, for retaliation under
FLSA.

**III. LEGAL STANDARD**

The party moving for dismissal under Rule 12(b)(6) bears
the burden of showing that the opposing party has not stated a
claim. See Kehr Packages v. Fidelcor, Inc., 926 F.3d 1406, 1409

(3d Cir. 1991). To meet this burden, a moving party must show that the complaint does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A plaintiff need not make out a prima facie case in the complaint in order to survive a motion to dismiss, however. Connelly v. Lane Construction Corp, 809 F.3d 780, 788-89 (3d Cir. 2016) (distinguishing between pleading requirements and evidentiary standards); Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("[A]n evidentiary standard is not a proper measure of whether a complaint fails to state a claim."). But, while a plaintiff need not have the correct legal theory or make out a prima facie case in the complaint, a plaintiff must allege facts to show that discovery will reveal sufficient support of each element of the claim. See Comcast Corp v. NAACP, 140 S. Ct. 1009, 1014-15 (2020) ("[W]hile the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant."); Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" (quoting Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)).

At this stage, the court must accept the plaintiff's well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Bell Atl. Corp., 550 U.S. at 555-56. But, the court must disregard any conclusory allegations in the complaint and instead look to well-pleaded factual allegations. Iqbal, 556 U.S. at 678-79.

## IV.  DISCUSSION

The antiretaliation provision of the Fair Labor Standards Act (FLSA) forbids an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" FLSA. 29 U.S.C. § 215(a)(3). In other words, "[r]etaliation occurs when an employer . . . takes an adverse action against an employee because they engaged in a protected activity . . . . includ[ing] . . . request of payment of wages . . . [or] exercising rights . . . ." Protecting Workers from Retaliation, Field Assistance Bulletin No. 2022-02, at 2, U.S. Dep't of Labor (Mar. 10, 2022).

The purpose of the antiretaliation provision of FLSA is to ensure that employees can assert their rights without fear of economic retaliation. Uronic v. Cabot Oil & Gas Corp., -- F.4th -- , 2022 WL 4231203, at *3-4 (3d Cir. 2022) (quoting Brock v. Richardson, 812 F.2d 121, 124 (3d Cir. 1987)). The

7

antiretaliation provision is thus "broadly construed" and "protect[s] employees engaging in activities not spelled out in the statute." Id. at *4. It "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace"; however, the provision is limited to "those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." Burlington N. & Santa Fe Ry Co. v. White, 548 U.S. 53, 57 (2006); see also Protecting Workers from Retaliation, at 3 (noting that former employees are protected under FLSA for retaliation that occurs after the termination of an employment relationship).

An adverse action refers to any action that could deter a worker from exercising their rights, and includes termination, threats, and blacklisting, among other actions. Id. at 2. An adverse action, standing alone, is insufficient; there must be a causal nexus between the protected activity and the adverse employment action. Id. at 3; see also Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67 ("The antiretaliation provision protects an individual from not all retaliation, but from retaliation that produces an injury or harm."); Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (listing the elements of a FLSA retaliation claim as "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse

8

employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action" (quoting <u>Scholly v. JMK Plastering, Inc.</u>, No. 07-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008))).

When the alleged retaliation occurs after an employee has been terminated, the plaintiff must allege that the action was materially adverse, and thus would dissuade a reasonable employee from making a similar charge, because it caused harm to the plaintiff's employment opportunities; such plaintiff cannot succeed merely by alleging that the employer engaged in upsetting conduct if it did not affect their future employment prospects. <u>Dean v. Phila. Gas Works</u>, No. 19-4266, 2021 WL 2661485, at *12 (E.D. Pa. June 28, 2021). A former employer thus engages in retaliation where its action "results in discharge from a later job, a refusal to hire the plaintiff, or other professional or occupational harm." <u>Charlton v. Paramus Bd. of Educ.</u>, 25 F.3d 194, 200 (3d Cir. 1994). In essence, post-employment retaliation "must relate to an employment relationship" and "involve[] some harm to an employee's employment opportunities." <u>Nelson v. Upsala College</u>, 51 F.3d 383, 387, 388 n.6 (3d Cir. 1995); <u>Boandl v. Geithner</u>, 752 F. Supp. 2d 540, 568 (E.D. Pa. 2010).

For example, an employer's disparaging statements about a former employee to current employees may be too slight of an

9

"adverse action" to give rise to a post-termination retaliation claim. Ergo v. Int'l Merchant Servs., Inc., 519 F. Supp. 2d 765, 780 (N.D. Ill. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)) ("[T]he Court concludes that Plaintiffs' allegations of accusation and name-calling cannot support liability under the FLSA's retaliation provision."). On the other hand, an employer's public disclosure that an employee had engaged in protected activity may constitute a materially adverse employment action. See Greengrass v. Int'l Monetary Sys., Ltd., 776 F.3d 481, 485 (7th Cir. 2015) ("[L]isting [Plaintiff's] name in publicly available SEC filings (and referring to her complaint as 'meritless') constituted a materially adverse employment action. . . . [N]aming EEOC claimants in publicly available SEC filings could 'dissuade[] a reasonable worker from making or supporting a charge of discrimination'--the essence of a materially adverse employment action (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68)).

Defendant does not contest that Plaintiff has engaged in protected activity. Plaintiff clearly engaged in protected activity by filing the original complaint, publicly exposing her employer's alleged failure to pay overtime wages. Defendant concedes awareness of the protected activity and does not contest that the statements in the Legal Intelligencer were made

10

in response to a question about this lawsuit, permitting an inference of retaliatory intent (indicating that the causation requirement is likely met). At issue, thus, is whether the statement in the Legal Intelligencer,[1] is a materially adverse employment action.

Plaintiff's allegations of harm based on legal conclusions must be disregarded.[2] Iqbal, 556 U.S. at 678-79. Her allegations

---

[1] The statement at issue, copied from p. 2 above, is as follows:

> According to Mongeluzzi, Purvenas-Hayes' July 2021 departure came just two weeks before the firm's deadline for employees to receive their firm-mandated COVID-19 vaccinations. He said she left because she did not wish to receive the shot and that he was one of two employees in the approximately 100-person firm not to comply.
> Mongeluzzi said the case is an instance of a disgruntled employee suing over unfounded claims.

[2] For instance, Plaintiff alleges:

> 43. The Legal Intelligencer reported the foregoing statements to the Philadelphia legal community on June 13, 2022, causing significant embarrassment and pain and suffering to Plaintiff (as Defendant Mongeluzzi intended).
> . . .
> 45. The foregoing disclosure was also made in retaliation for Plaintiff's filing of the instant civil action to assert her rights under the Fair Labor Standards Act.
> . . .
> 81. Defendants' public disclosure of Plaintiff's confidential medical information and their other statements as aforesaid were made deliberately and in retaliation for Plaintiff's filing of the instant action and other protected activity under the FLSA.
> . . .

that remain do not sufficiently allege that she suffered a
materially adverse employment action--that is, she has not
sufficiently alleged that her future employment prospects were
harmed. Plaintiff alleges in the Second Amended Complaint that
she has applied for paralegal positions with at least six
employers and, since the publication of the Legal Intelligencer
article, has been rejected from all of these positions. Am.
Compl. ¶¶ 51-67. Defendants challenge the significance of
Plaintiff's rejections, as Plaintiff was employed in an
apparently comparable position at the time the Intelligencer
article was published, and remains employed in the same position
today. Defs.' Mot. at 2. Defendants further argue that Plaintiff
cannot make out a FLSA retaliation claim because she has not
alleged that she met the qualifications of any of the jobs to
which she applied, nor has she alleged that any of the potential
employers disclosed or so much as suggested that they had heard
of or read the Intelligencer article containing the allegedly
damning statements. Id. at 3-6; see also Charlton, 25 F.3d at

---

84. Upon information and belief, Defendants'
statements as aforesaid constituted an adverse
employment action in that they deprived Plaintiff of
employment opportunities, including but not limited to
the opportunities outlined supra at paragraphs 51
through 67.

Second Am. Compl. ¶¶ 43, 45, 81, 84.

201 (requiring a plaintiff to ultimately demonstrate that a defendant former employer "made a retaliatory use of [its] influence to the detriment of [a plaintiff's] employment opportunities"); Wadhwa v. Secretary, Dep't of Veterans Affs., 505 F. App'x 209, 215 (3d Cir. 2012) (noting that a plaintiff could not make out a claim of retaliation for failure to hire where he "ha[d] not identified who was aware of his protected activity . . . , who was responsible for not selecting him for the vacancy, and how his failure to be selected was in any way connected to his protected activity" and "the fact that he was given no explanation for his non-selection" was not "sufficient to demonstrate a causal connection").

Plaintiff relies exclusively on (1) the fact that the article was publicly available and comes up on Google when her name is searched;[3] (2) the assumption that all prospective employers must have Googled her and seen the statements by Defendants in the article; (3) the assumption that prospective employers saw the statements and decided not to hire her on that

---

[3] The Court notes that, as of January 16, 2023, the article does not show up within the first three Google search results for "Desiree Purvenas-Hayes." In fact, an open source version of the docket of this lawsuit appears in the top three search results, and the Legal Intelligencer article is not on the first page at all. Rather, a Law360 article which does not have the statements at issue in it returns in the top ten search results. The Legal Intelligencer article becomes the second search result when searching for "Desiree Purvenas-Hayes Legal Intelligencer." And, the article is no longer accessible for free.

basis; and (4) the temporal proximity between the article and
her rejections to support her claim of retaliation.[4] Pl.'s Resp.
in Opp'n at 5. But, without any allegation that Plaintiff was
even qualified for these positions or that she had to apply for
non-comparable positions in order to find substitute employment,
it is too speculative to open the doors of discovery--directed
towards multiple third-parties--on the retaliation claim.[5]
Moreover, Plaintiff has not alleged sufficient facts to show

---

[4] Eure v. Friends' Central School Corp., 18-1891, 2019 WL 3573489
(E.D. Pa. Aug. 5, 2019), in ultimately finding that Plaintiffs'
complaint could survive a motion to dismiss on a retaliation
claim arising in part out of a former employer's statement to a
newspaper regarding Plaintiffs' protected activity is not to the
contrary. Rather, in Eure, Plaintiffs explicitly pleaded that
"Defendants' public statements concerning the reasoning and
nature of Plaintiffs' suspension and firing, lowered Plaintiffs'
reputations in the community and prevented them from securing
gainful employment." Id. at *10 (emphasis added). There is no
such allegation here that Plaintiff has not been able to secure
comparable employment as a paralegal since resigning from Saltz
Mongeluzzi & Bendesky P.C.

[5] Notably, at the hearing on the Partial Motion to Dismiss on
October 6, 2022, Plaintiff's counsel stated, in response to the
Court's asking "how has she been adversely affected by the
statement," that she had not been impacted employment-wise up to
that point, and "doesn't know of anybody who refused to hire her
or pay her." Hr'g Tr. 22:9-22, ECF No. 23. Moreover, Plaintiff's
counsel stated that, "At the time the statement was made she was
working. . . . She's still there." Id. 23:9-14. Counsel also
stated that the adverse employment aspect at issue was the
prospective effect on Plaintiff's employment, as the adverse
action hadn't happened yet. Id. 24:5-20. However, five of the
six rejections that Plaintiff claims were caused by Defendant's
statements had already occurred.

that Defendants exercised some influence over the prospective employers' decisions not to offer her a job.

Given that Plaintiff has already had ample notice, time, and opportunity to support Count II following the October 6, 2022, hearing on Defendants' initial Motion to Dismiss, the motion to dismiss the Second Amended Complaint shall be granted and leave to amend will be denied.

## V.    CONCLUSION

For the foregoing reasons, Count II of Plaintiff's Second Amended Complaint for retaliation under FLSA is dismissed with prejudice. An appropriate order follows.